734

cording to our decision in Virginia Electric & Power Co., supra, and the Commissioner's own subsequent ruling, Rev.Rul. 55-485, 1955-32 Int.Rev.Bull. 18. Pursuant to section 292(a) the interest should have run until the deficiencies against which these overpayments were credited were assessed. The Government concedes that to that extent its determination of the plaintiff's taxes was wrong.

But the parties disagree as to when the deficiencies were assessed. The plaintiff, in its original petition, claimed interest on its overpayments only to August 12, 1949, the date on which the Government tentatively credited the overpayments against deficiencies. In its amended petition, the plaintiff claims interest to May 31, 1950, the date on which the plaintiff's overpayments were "scheduled". The Government says that this additional claim is barred by the statute of limitations since the amended petition was not filed until more than six years after the May 1950 date, to which date the plaintiff claims interest. The plaintiff says that its amended petition recites no new facts and merely asserts a legal conclusion different from that asserted in its original petition, and hence relates back to the filing date of the original petition. We are inclined to agree with the plaintiff, but we do not find it necessary to decide the point.

Under section 3771(b), as we have seen, interest on overpayments runs to the date on which the deficiencies against which the overpayments are credited are assessed. The Government says these deficiencies were assessed on August 12, 1949. The plaintiff says that what happened on August 12, 1949 was only tentative and that the final, definitive assessment of the deficiencies did not occur until May 31, 1950, the date on which the overpayments were "scheduled" by the Commissioner.

The plaintiff points to certain documents dated August 12, 1949 showing assessments and "payments", apparently including payments by credit, each one bearing the legend, "Tentative Cr.". The plaintiff seems to urge that if the credits were tentative, the assessments of the deficiencies were equally tentative. The Government says this is not so and that the assessment of the deficiencies was final. It reprints other documents which seem to show that there was nothing tentative about the assessments of the deficiencies. Since the legend on the plaintiff's documents says only that the credits are tentative, we have no basis for concluding that the assessments of the deficiencies were also tentative. The proper interest date is, then, August 12, 1949.

Plaintiff is entitled to recover $12,350.63.

It is so ordered.

JONES, Chief Judge, and WHITAKER, Judge, concur.

LITTLETON, Judge, dissents.

LARAMORE, Judge, took no part in the consideration and decision of this case.

CROWN ZELLERBACH CORPORATION
v.
UNITED STATES.
No. 298-55.

United States Court of Claims.
Dec. 4, 1957.

W. J. McFarland, Beverly Hills, Cal., Harry R. Horrow, Robert W. Morrison, and Pillsbury, Madison & Sutro, San Francisco, Cal., on the briefs, for plaintiff.

Elizabeth Davis, with whom was Charles K. Rice, Asst. Atty. Gen., James P. Garland, Washington, D. C., on the brief, for defendant.

FAHY, Circuit Judge, sitting by designation, delivered the opinion of the court:

Plaintiff filed its income and excess profits tax returns for the taxable year 1951 on July 16, 1951, in accordance with section 53(a) of the Internal Revenue Code of 1939 [1] then in effect. Under the provisions of sections 56(b) (2) (A) and 56(b) (3) (A) plaintiff elected to pay the tax liability disclosed on its returns in four installments and made payment of 30 percent on July 16, 1951, and 30 percent on October 15, 1951. Each of these payments amounted to $5,995,655.77. On October 20, 1951, the Revenue Act of 1951, 65 Stat. 452, which had been pending in Congress during the above periods, became effective. It provided in section 124, 26 U.S.C.A. (I.R.C.1939) § 53 note, that corporate taxpayers whose taxable years ended after March 31, 1951, and before October 1, 1951—which included plaintiff, whose fiscal year ended on April 30, 1951—should file returns after October 20, 1951, and on or before January 15, 1952, as to the tax imposed by chapter 1 of the Internal Revenue Code, and that no return for such taxable year filed on or before October 20, 1951, was to be considered as a return for any purpose of the Code.

Plaintiff contends that by reason of these statutory provisions effective October 20, 1951, the payments it had previously made on July 16 and on October 15, 1951, were not applicable to any of its 1951 tax liability, and that accordingly the payments constituted overpayments and continued in that category until January 15, 1952, the due date of plaintiff's 1951 return pursuant to the 1951 act. Plaintiff's claim in this court is for interest at six percent on the amount of the two payments. It relies upon section 3771(a) of the Internal Revenue Code, which provides:

"Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the rate of 6 per centum per annum."

As alternatives to its claim of interest plaintiff contends (a) there arose an obligation on the part of the United States to compensate plaintiff for the reasonable value of the use and enjoyment of

---

[1]. All statutory references are to sections of the Internal Revenue Code of 1939, 26 U.S.C.A., unless otherwise specifically designated.

the funds, or (b) failure of the United States to refund or to credit said amounts to plaintiff against any income tax, or installment thereof, then due by plaintiff, deprived it of the use of its funds without due process of law, entitling plaintiff to the reasonable value of the use and enjoyment of the funds. We cannot agree that plaintiff is entitled either to interest or to other compensation.

In addition to the provisions relied upon by the plaintiff, namely, that no return filed on or before the date of its enactment should be considered as a return for 1951, and specifying later dates for making returns, section 124 of the 1951 act also provides:

"All payments with respect to any tax for such taxable year imposed by chapter 1 of such code [1939] under the law in effect prior to the enactment of this Act, to the extent that such payments have not been credited or refunded, shall be deemed payments made at the time of the filing of the return required by this section * * *."

On March 14, 1952, to which date the Commissioner had extended the time for filing returns, plaintiff filed its new returns. The payments made July 16, 1951, and October 15, 1951, under the law then in effect, were credited upon the 1951 tax liability of plaintiff, which exceeded those payments.

Clearly, the above factual and legislative situation gives no indication of any intention on the part of Congress to convert such payments as were here made into overpayments carrying interest charges against the United States. There is a "traditional immunity of the Government from the burden of interest unless it is specifically agreed upon by contract or imposed by legislation." United States v. Goltra, 312 U.S. 203, 207, 61 S.Ct. 487, 490, 85 L.Ed. 776, and cases there cited. We cannot impute to Congress an unwitting departure from this tradition. In providing in substance that the relevant returns, if previously made, were to be held for naught as it were, and were to be remade between the effective date of the new act October 20, 1951, and January 15, 1952, except as the time might be extended, there was no extinguishment of tax liability. On the contrary, the act of 1951 simultaneously provided that previous payments should be deemed payments on that liability at the time new returns were filed. The pertinent provisions of the act of 1951 are interdependent. They should not be read in isolation one from the other. The benefit plaintiff seeks from the provisions regarding returns is countermanded by the provision which applies the earlier payments to a tax liability which, we think, continued to exist although new returns were to be filed. Unless in excess of that liability, which is not the case, the payments were not overpayments.

Had plaintiff made no payments until it filed new returns under the 1951 act, no doubt it would have retained the use of the funds involved; but it does not follow that an obligation arose on the part of the United States to compensate plaintiff for its use of the funds. They came into the hands of the United States for what they purported to be, payments on a tax liability. Even if statutory changes caused them to become prepayments, no interest was due thereon, for no statute provides for interest on prepayments. And we know of no support, resting in the constitution or elsewhere, for requiring the United States to pay compensation for the use of funds received by it on the amount of an existing tax liability, when the funds are less than the amount of the liability. There was in fact no hiatus during which the payments could be considered as not made in a regular manner, within the power of Congress to require. The payments were due when made, under the statute then in effect. When that statute was superseded October 20, 1951, by the act of 1951, relied upon as suspending the time of payment, they were held for credit on such liability as might appear in a definite amount from the new returns. Had that amount turned out to be less than the payments, a different case would have been presented. But since this did not eventuate, the funds were at all times

available for uncompensated use by the United States. This much latitude allowed to the Government in the intricate problems of meshing together operations under a new tax statute with the statute it supersedes seems reasonable enough to escape any serious challenge to its validity on any score. There is no obligation to compensate for the use of amounts paid which are the subject matter of transition from one statutory plan to a succeeding one, when the amounts are less than the amount of liability for the tax.

Plaintiff's petition will be dismissed. It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.

---

**George H. PASHLEY and Selma T. Pashley**

v.

**The UNITED STATES.**

**No. 125-55.**

United States Court of Claims.

Dec. 4, 1957.

Mont Clair Spear, Seattle, Wash., for plaintiffs. Lewie Williams, Seattle, Wash., was on the briefs.

Howard O. Sigmond, Washington, D. C., with whom was Asst. Atty. Gen. Perry W. Morton, for defendant.

WHITAKER, Judge.

Plaintiffs sue for just compensation, alleging that their property has been flooded and that its value for the mining of sodium sulphate has been destroyed as a result of the construction of the O'Sullivan Dam on Lower Crab Creek in the State of Washington. Defendant defends on the ground that the flooding was not the natural and necessary consequence of the construction of the dam, and on the ground that plaintiffs have no title to the minerals on the property.

The land in question is situated in the Columbia Basin in central Washington.